968 F.2d 1214
 140 L.R.R.M. (BNA) 2744
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BRICKLAYERS' LOCAL UNION # 14, INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFTSMAN, AFL-CIO, a
voluntary unincorporated labor
organization, Plaintiff-Appellant,
Bricklayers & Trowel Trades' International Pension Fund;
Bricklayers Industry Advancement Fund;
Bricklayers Joint Apprenticeship
Training Committee, Plaintiffs,
v.
COLASANTI CORPORATION, a corporation incorporated under the
laws of the State of Michigan, Defendant-Appellee.
 No. 91-1482.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1992.
 
 Before MARTIN and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Bricklayers' Local Union # 14 appeals the district court's decision granting summary judgment to the Colasanti Corporation. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 Colasanti is a Michigan-based structural concrete contractor. Local 14 is a union local that governs various construction trades including cement masons. Local 14's "geographical jurisdiction" is Washtenaw County, Michigan, and portions of Livingston County, Michigan. Local 14's union authority over cement masons does not, however, extend to the three-county area surrounding Detroit. Thus, in Wayne, Oakland, and Macomb Counties three other union locals govern cement masons: (1) Cement Masons, Local 514 in Detroit, (2) Cement Masons, Local 29 in Pontiac, Michigan, and (3) Cement Masons, Local 26 in Mt. Clemens, Michigan.
 
 
 3
 On August 6, 1987, the Washtenaw Contractors Association entered into a collective bargaining agreement with Local 14 effective from August 6, 1987, until July 31, 1990. Under the agreement, the Washtenaw Contractors Association recognized Local 14 as the sole collective bargaining agent for employees who (1) were represented by Local 14, and (2) worked on an association member's construction project if the project was located in Local 14's jurisdiction. The agreement contained numerous provisions including a provision setting forth the hourly compensation for cement masons. Although Colasanti was not a member of the Washtenaw Contractors Association, the company became bound by the Local 14 collective bargaining agreement by signing a "memorandum of agreement" for "non-association contractors." The memorandum stated that Colasanti agreed to be bound by all the terms of the Local 14 collective bargaining agreement. The agreement also stated:
 
 
 4
 [Colasanti], by its authorized agent who has executed this Agreement, hereby affirms that it has read the collective bargaining agreement attached hereto and that it is familiar with its terms, and [Colasanti] hereby adopts and accepts the attached agreement in its entirety as the basis upon which it will employ members of Local Union No. 14 MI.
 
 
 5
 (emphasis added)
 
 
 6
 This case gets more complicated because at all times relevant to this litigation Colasanti was a member of a Detroit contractors' association. In the 1980's, this association entered into a collective bargaining agreement with Local 514, Local 29, and Local 26. Because Colasanti was a member of the association, it became bound by the collective bargaining agreement between the contractors' association and the three Detroit-area unions. The agreement, which was effective from June 1, 1987, until June 1, 1989, governed working conditions for the locals' cement masons on any construction project located in Wayne, Oakland, or Macomb County. Thus, the agreement set forth the hourly compensation for cement masons.
 
 
 7
 In 1987, Colasanti began working on a construction project in Washtenaw County that required the use of cement masons. Washtenaw County, of course, was part of Local 14's cement masons' jurisdiction. A majority of the cement masons that Colasanti used on the project were members of Local 14, and Colasanti paid these cement masons according to the provisions of the collective bargaining agreement between Local 14 and the Washtenaw Contractors Association. Colasanti, however, also used several of the corporation's permanent cement masons who were members of Local 514, Local 29, or Local 26. Colasanti paid these cement masons according to the collective bargaining agreement between the Detroit contractors' association and the three Detroit-area unions.
 
 
 8
 In 1989, a Local 14 audit of Colasanti's records revealed that Colasanti had paid cement masons who were members of the Detroit-area unions according to the Detroit collective bargaining agreement even though the construction project was located within Local 14's jurisdiction. On June 19, 1989, four plaintiffs filed an action against Colasanti alleging that the company had breached Local 14's collective bargaining agreement because the corporation (1) did not pay wages to all cement masons according to Local 14's collective bargaining agreement; (2) did not pay union dues to Local 14 on behalf of all cement masons; and (3) did not pay fringe benefit contributions to all cement masons according to Local 14's collective bargaining agreement.
 
 
 9
 Subsequently, the plaintiffs and Colasanti filed cross-motions for summary judgment. The district court granted summary judgment to Colasanti after ruling there was nothing in Local 14's collective bargaining agreement that imposed a duty on Colasanti to pay members of the three Detroit-area unions in accordance with Local 14's agreement. All four of the plaintiffs appealed from the district court's decision. However, because of our decision in Bricklayers Local Union No. 14 v. Russell Plastering, 948 F.2d 229 (6th Cir.1991), which involved essentially the same collective bargaining agreement as this case, three of the four original plaintiffs in this action have decided to abandon their claims related to fringe benefits. The sole remaining appellant before this court is Local 14, and the sole remaining claim concerns wages and union dues.
 
 
 10
 Summary judgment is not a disfavored procedural shortcut; it is an integral part of the federal rules of civil procedure. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). It is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is not a genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Canderm Pharmacal, Ltd. v. elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)) (emphasis added). In reviewing a motion for summary judgment, this court views the evidence in a light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 11
 As an initial matter, Local 14 asserts that in light of our decision in Russell Plastering, 948 F.2d at 229, we should reverse the district court's decision regarding Local 14's claim for wages and union dues. Local 14 asserts that "the Russell Plastering [c]ourt's interpretation of the contract language in question entitled [Russell] to summary judgment on the fringe benefits claims made in that case, but the [c]ourt's remand order recognized that the defendant in Russell Plastering was not entitled to judgment as a matter of law on the wage and [union] dues check-off issues."
 
 
 12
 We believe, however, that Local 14 has mischaracterized the rationale behind this court's remand order in Russell Plastering. In Russell Plastering, which is a case that is almost identical to the present case, the contractor had signed two collective bargaining agreements. One collective bargaining agreement was between the contractor and Local 14; the second agreement was between the contractor and Local 67, which was Detroit-area local union. Id. at 230. The Local 14 collective bargaining agreement in Russell Plastering contained the same relevant language as the agreement in this case. After signing the collective bargaining agreements, Russell began work on a construction project that was located in Local 14's geographical jurisdiction. On this project, Russell employed both Local 14 members and Local 67 members. Russell paid the Local 14 members according to the Local 14 collective bargaining agreement; however, Russell paid the Local 67 members according to the Local 67 collective bargaining agreement. Id. After Local 14 and three fringe benefit funds filed an action, the district court, inter alia, dismissed Local 14's wages claim after ruling that Local 14 had failed to exhaust the grievance and arbitration procedures contained in the collective bargaining agreement. Id. at 231. On appeal, this court concluded that the union could challenge the wages issue in district court without resort to the agreement's grievance and arbitration procedures; therefore, we held the district court had erred in dismissing Local 14's wage claim on procedural grounds--failure to exhaust grievance and arbitration procedures. Id. at 231-32 Local 14's assertions in this case notwithstanding, there is no language in Russell Plastering to suggest that we remanded Local 14's wage and union dues claims because we determined that Russell was not entitled to summary judgment based on the language of the collective bargaining agreement. We, therefore, reject Local 14's argument.
 
 
 13
 Although our decision in Russell Plastering does not support a remand of Local 14's wage and union dues claim, it does guide our interpretation of the collective bargaining agreement's language on wages and union dues. In Russell Plastering, we had to determine whether Russell had violated Local 14's collective bargaining agreement by paying fringe benefits to Local 67 members according to the Local 67 agreement even though the construction project was located in Local 14's jurisdiction. We noted that because Russell was not a member of the Washtenaw Contractors Association, the "memorandum of agreement" for "non-association contractors" contained the controlling language. We held that under the language of the memorandum of agreement, Russell had accepted and adopted the underlying agreement only as the basis on which it would employ members of Local 14. Id. at 231-32. Thus, to the extent that Russell had hired members of Local 14, Russell was required to comply with the terms of the Local 14 agreement. However, to the extent that Russell employed members of Local 67, Russell could pay them according to the Local 67 agreement without violating the Local 14 agreement. Id. at 232.
 
 
 14
 In this case, we find no good reason to interpret the wages and union dues provision in the Local 14 agreement any differently than Russell Plastering 's interpretation of the agreement with respect to fringe benefits. Hence, we hold that Colasanti did not breach Local 14's agreement by paying members of the three Detroit-area unions according to the company's collective bargaining agreement with these three entities.
 
 
 15
 For the foregoing reasons, we affirm the judgment of the district court.